**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BEVERLY DIANE DUNCAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 13-17** |
| | ) | |
| **CAROLYN W. COLVIN, ACTING** | ) | **Judge Cathy Bissoon/** |
| **COMMISSIONER OF SOCIAL** | ) | **Magistrate Judge Maureen P. Kelly** |
| **SECURITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

### I.  INTRODUCTION

Plaintiff Beverly Diane Duncan ("Duncan") brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-433.  The matter is presently before the Court on cross-motions for summary judgment filed by the parties pursuant to Federal Rule of Civil Procedure 56.  (ECF Nos. 9, 11).  For the reasons that follow, it is respectfully recommended that Duncan's motion for summary judgment (ECF No. 9) be denied, that the Commissioner's motion for summary judgment (ECF No. 11) be granted, and that the Commissioner's decision be affirmed.

### II.  PROCEDURAL HISTORY

Duncan protectively applied for disability insurance benefits on July 15, 2010, alleging that she had become "disabled" on November 14, 2008.  (R. at 15, 100).  Pennsylvania's Bureau of Disability Determination ("Bureau") denied the application on September 7, 2010.  (R. at 44).

Duncan responded on October 18, 2010, by filing a request for an administrative hearing. (R. at 49-50). On November 1, 2011, a hearing was held in Pittsburgh, Pennsylvania, before Administrative Law Judge ("ALJ") Leslie Perry-Dowdell. (R. at 27). Duncan, who was represented by counsel, appeared and testified at the hearing. (R. at 30-37). Joseph McBride ("McBride"), an impartial vocational expert, provided testimony about the expectations of employers existing in the national economy. (R. at 38-40). In a decision dated November 14, 2011, the ALJ determined that Duncan was not "disabled" within the meaning of the Act and denied her application for benefits. (R. at 12-23).

On November 23, 2011, Duncan sought administrative review of the ALJ's decision by filing a request for review with the Appeals Council. (R. at 10). The Appeals Council denied the request for review on November 6, 2012, thereby making the ALJ's decision the "final decision" of the Commissioner in this case. (R. at 1). Duncan commenced this action on January 4, 2013, seeking judicial review of the Commissioner's decision. (ECF No. 1). Duncan and the Commissioner filed motions for summary judgment on May 20, 2013, and June 21, 2013, respectively. (ECF Nos. 9, 11). Those motions are the subject of this Report and Recommendation, which is being filed pursuant to 28 U.S.C. § 636(b)(1)(C).

## III. STANDARD OF REVIEW

This Court's review is plenary with respect to all questions of law. Schaudeck v. Commissioner of Social Security Administration, 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. Monsour Medical Center v. Heckler, 806 F.2d

1185, 1190-1191 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565, 108 S.Ct. 2541 (1988)(internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." Stunkard v. Secretary of Health & Human Services, 841 F.2d 57, 59 (3d Cir. 1988); Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. Stewart v. Secretary of Health, Education & Welfare, 714 F.2d 287, 290 (3d Cir. 1983). The administrative

law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. <u>Weir on Behalf of Weir v. Heckler</u>, 734 F.2d 955, 961 (3d Cir. 1984); <u>Cotter v. Harris</u>, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively-delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process by stating as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

<u>Barnhart v. Thomas</u>, 540 U.S. 20, 24-25, 124 S.Ct. 376 (2003)(footnotes omitted). Factual findings pertaining to all steps of the sequential evaluation process are subject to judicial review under the "substantial evidence" standard. <u>McCrea v. Commissioner of Social Security</u>, 370 F.3d 357, 360-361 (3d Cir. 2004).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in

making its decision.  In <u>Securities & Exchange Commission v. Chenery Corp.</u>, 332 U.S. 194, 67

S.Ct. 1575 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of
> administrative law.  That rule is to the effect that a reviewing court, in dealing
> with a determination or judgment which an administrative agency alone is
> authorized to make, must judge the propriety of such action solely by the grounds
> invoked by the agency.  If those grounds are inadequate or improper, the court is
> powerless to affirm the administrative action by substituting what it considers to
> be a more adequate or proper basis.  To do so would propel the court into the
> domain which Congress has set aside exclusively for the administrative agency.

<u>Id.</u> at 196.  The United States Court of Appeals for the Third Circuit has recognized the

applicability of this rule in the Social Security disability context.  <u>Fargnoli v. Massanari</u>, 247

F.3d 34, 44, n. 7 (3d Cir. 2001).  Thus, the Court's review is limited to the four corners of the

ALJ's decision.  <u>Cefalu v. Barnhart</u>, 387 F.Supp.2d 486, 491 (W.D.Pa. 2005).

## IV.    THE DECISION OF THE ALJ

In her decision, the ALJ determined that Duncan had not engaged in substantial gainful

activity subsequent to November 14, 2008, her alleged onset date.  (R. at 17).  Duncan was found

to be suffering from: diabetes mellitus, hypertension, diabetic neuropathy, irritable bowel

syndrome, ventricular tachycardia, a hearing disorder, osteoarthritis, carpal tunnel syndrome, and

an adjustment disorder.  (R. at 17-18).  Her diabetes mellitus, hypertension, diabetic neuropathy,

irritable bowel syndrome and ventricular tachycardia were deemed to be "severe" under the

Commissioner's regulations.  (R. at 17).  However, the ALJ concluded that Duncan's

impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart

P, Appendix 1.  (R. at 18).

In accordance with 20 C.F.R. § 404.1545, the ALJ assessed Duncan's "residual functional capacity"[1] as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b); however, she is limited to only occasional climbing of ramps and stairs with no kneeling, stooping, crouching or crawling. Further, she would require a hand held device for prolonged walking and standing.

(R. at 18). Duncan had "past relevant work"[2] experience as an administrative assistant. (R. at 133). McBride, the impartial vocational expert, classified that position as a "skilled"[3] job at the "sedentary"[4] level of exertion. (R. at 38). He testified that an individual who could perform the range of "light"[5] work reflected in the ALJ's residual functional capacity assessment would be able to maintain a job as an administrative assistant. (R. at 38-39). In light of McBride's testimony, the ALJ concluded that Duncan would be capable of performing her past relevant

---

[1] The term "residual functional capacity" is defined as "that which an individual is still able to do despite the limitations caused by his or her impairments." Hartranft v. Apfel, 181 F.3d 358, 359, n. 1 (3d Cir. 1999)(parentheses omitted), citing 20 C.F.R. § 404.1545(a). The same residual functional capacity assessment is used at the fourth and fifth steps of the sequential evaluation process. 20 C.F.R. §§ 404.1545(a)(5)(i)-(ii), 416.945(a)(5)(i)-(ii).

[2] "Past relevant work" is defined as "substantial gainful activity" performed by a claimant within the last fifteen years that lasted long enough for him or her to learn how to do it. 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). The Commissioner has promulgated comprehensive regulations governing the determination as to whether a claimant's work activity constitutes "substantial gainful activity." 20 C.F.R. §§ 404.1571-404.1576, 416.971-416.976.

[3] "Skilled work requires qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produced. Skilled work may require laying out work, estimating quality, determining the suitability and needed quantities of materials, making precise measurements, reading blueprints or other specifications, or making necessary computations or mechanical adjustments to control or regulate the work. Other skilled jobs may require dealing with people, facts, or figures or abstract ideas at a high level of complexity." 20 C.F.R. §§ 404.1568(c), 416.968(c).

[4] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b), 416.967(b).

work as an administrative assistant.  (R. at 23).  The ALJ further found that this work did not require the performance of activities precluded by Duncan's residual functional capacity.

## V.    VOCATIONAL FACTORS

Duncan was born on July 3, 1946, making her sixty-two years old on her alleged onset date and sixty-five years old on the date of the ALJ's decision.  (R. at 100).  She was classified as a "[p]erson of advanced age" under the Commissioner's regulations.  20 C.F.R. § 404.1563(e).  Duncan had more than a high school education[6] and an ability to communicate in English.  (R. at 133); 20 C.F.R. § 404.1564(b)(4)-(5).  McBride testified that the skills acquired by Duncan during her time as an administrative assistant were transferable to other forms of "sedentary" work.  (R. at 38); 20 C.F.R. § 404.1568(d).

## VI.    DISCUSSION

### A.    ADDITIONAL EVIDENCE NOT TO BE CONSIDERED

In support of her request for review, Duncan submitted documentary evidence to the Appeals Council that had never been presented to the ALJ.  (R. at 5-6, 149-155, 227-261).  The Act authorizes judicial review only over a "final decision" of the Commissioner.  Califano v. Sanders, 430 U.S. 99, 108, 97 S.Ct. 980 (1977); Bacon v. Sullivan, 969 F.2d 1517, 1519-1521 (3d Cir. 1992).  A federal court has no jurisdiction to entertain a challenge to a decision by the Appeals Council denying a claimant's request for review.  Matthews v. Apfel, 239 F.3d 589, 594 (3d Cir. 2001).  When the Appeals Council denied Duncan's request for review, the ALJ's decision became the "final decision" of the Commissioner in this case.  Sims v. Apfel, 530 U.S. 103, 106-107, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000).

The sixth sentence of § 405(g) provides that a reviewing court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a

---

[6] The documentary record indicates that Duncan completed two years of college.  (R. at 133).

showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). This provision permits a court to remand a case "because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding." Melkonyan v. Sullivan, 501 U.S. 89, 98, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991). "[T]he materiality standard requires that there be a reasonable probability that the new evidence would have changed the outcome of the [Commissioner's] determination." Szubak v. Secretary of Health & Human Services, 745 F.2d 831, 833 (3d Cir. 1984). A remand under sentence six is appropriate only where a claimant demonstrates that "good cause" existed for his or her failure to procure the relevant evidence at a time when it could have been considered in connection with his or her application for benefits. Chandler v. Commissioner of Social Security, 667 F.3d 356, 360 (3d Cir. 2011). Duncan does not ask for a sentence-six remand. Indeed, she expressly disavows any reliance on the additional evidence submitted to the Appeals Council. (ECF No. 10 at 2, n. 3). Consequently, this Court's review is limited to the evidence that was before the ALJ at the time of her decision. Matthews, 239 F.3d at 592-595.

**B.    LAY OFF FROM EMPLOYMENT**

Duncan worked as an administrative assistant during the eighteen years immediately preceding her alleged onset date. (R. at 133). She was laid off on November 14, 2008. (R. at 31, 132).[7] At the hearing, Duncan testified that her previous employer was no longer in business. (R. at 31). She stated that she had received unemployment compensation benefits through December 2010. (R. at 31). The Court notes that in order to be eligible for unemployment

---

[7] Duncan's alleged onset date is November 14, 2008, the date that she was laid off from her employment as an administrative assistant.

compensation benefits under Pennsylvania law, an individual must be "able to work and available for suitable work." 43 PA. STAT. § 801(d)(1).

## C.    RECORD OF MEDICAL CARE

In April 2003, Duncan was taken to Forbes Regional Hospital after suffering an "episode of syncope." (R. at 216). It was determined that she had experienced ventricular tachycardia. (R. at 216). An echocardiogram revealed that Duncan had normal left ventricular function. (R. at 216). Objective testing detected no significant valvular disease or ischemia. (R. at 216). Duncan's treating physicians ultimately settled on a diagnosis of Long QT Syndrome. (R. at 216). A dual-chamber defibrillator was implanted in Duncan in 2003 to address this cardiac condition. (R. at 216). Thereafter, she was seen by Arrhythmia Associates, P.C., on an annual basis. (R. at 216-217).

During the period of time relevant to this case, Duncan regularly visited her primary care physician, Dr. Michael P. Hahalyak, for periodic examinations. The examinations revealed that Duncan's heart was operating at a regular rate and rhythm. (R. at 166, 177, 185, 188, 190). Dr. William Forstate, a treating cardiologist, reported on August 25, 2008, that Duncan had not been experiencing palpitations. (R. at 159). A few weeks later, Dr. Hahalyak noted that Duncan was "doing fairly well" and had lost twenty pounds. (R. at 180). Since her triglycerides were high, Duncan was encouraged to lose an additional ten to fifteen pounds. (R. at 181).

Dr. Hahalyak examined Duncan on December 3, 2008. (R. at 176-177). Duncan complained of occasional pain in her left shoulder and mild pain in her lower back. (R. at 176). Dr. Hahalyak observed that Duncan was otherwise "[d]oing very well," and that she had "[n]o new medical problems." (R. at 176). During the examination, Duncan stated that she would be applying for disability insurance benefits. (R. at 176). Dr. Hahalyak expressed an intention to

"fill out her disability evaluations" when they were sent to him. (R. at 177). The examination occurred just a few weeks after Duncan had been laid off. (R. at 31, 132).

Duncan was examined on a yearly basis by her treating cardiologist, Dr. William Forstate of Premier Medical Associates-Cardiology. On August 10, 2009, Duncan visited Dr. Forstate for her annual cardiac examination. (R. at 156). Although Duncan complained of rare palpitations lasting for less than a minute, Dr. Forstate asserted that they were not suggestive of arrhythmia. (R. at 156). Duncan's blood pressure was "under adequate control." (R. at 156). She did not experience shortness of breath or chest pain in 2009. (R. at 169, 172).

Duncan returned to Dr. Hahalyak's office on July 28, 2010, complaining of "considerable fatigue" as well as the re-emergence of chronic episodic vertigo. (R. at 164). She suggested that her symptoms were attributable to her heart condition. (R. at 164). Dr. Hahalyak noted that Duncan informed him that she was going to apply for disability based on her "many medical problems." (R. at 164).

On August 10, 2010, Duncan informed the Bureau that she has a pacemaker to control fibrillation and uses a cane "all the time" that was prescribed "a long time ago" by Dr. Hahalyak. (R. at 215). She stated that her "physical condition" keeps her from working. (R. at 215). Although Duncan was taking prescribed medications for depression, she denied that her mental condition would prevent her from performing work-related tasks. (R. at 215).

On August 24, 2010, Dr. Edward Jonas, a non-examining psychological consultant, reported that Duncan's mental impairments were not "severe." (R. at 192). As to Duncan's medical impairments, Dr. V. Rama Kumar, a non-examining medical consultant, opined on September 1, 2010, that Duncan was physically capable of engaging in a range of "light" work activities involving only occasional postural maneuvers. (R. at 205-211).

On January 11, 2011, Duncan was again evaluated at Arrhythmia Associates, P.C. (R. at 218). She complained of "worsening fatigue" during the previous few months. (R. at 218). Duncan denied that she had experienced shortness of breath, chest pain, dizziness or lightheadedness. (R. at 218). In a letter to Dr. Forstate, Certified Registered Nurse Practitioner Connie Glagola explained that a "sensor" had been added "to increase [Duncan's] heart rate and improve her overall exercise tolerance." (R. at 218).

On September 28, 2011, Dr. Hahalyak filled out a "multiple impairment questionnaire" form provided by Duncan. (R. at 219-226). He indicated that she could not sit, stand or walk for more than one hour during the course of an eight-hour workday. (R. at 221). Dr. Hahalyak reported that Duncan could "occasionally" lift or carry objects weighing between ten and twenty pounds, but that she could never push, pull, bend or stoop. (R. at 222, 225). He asserted that if Duncan were to be gainfully employed, she would need to take ten-minute breaks on an hourly basis and miss more than three days of work per month. (R. at 221-222). Dr. Hahalyak further stated that the "symptoms and limitations" described on the form dated back to 2002. (R. at 225).

At the hearing before the ALJ, in response to a question posed by Duncan's counsel, McBride testified that an individual with the functional limitations identified by Dr. Hahalyak would not be able to maintain a full-time job. (R. at 40).

### D. CONSIDERATION OF EVIDENCE BY THE ALJ

Before considering the documentary evidence and hearing testimony, the ALJ correctly noted:

> Generally, a treating source opinion as to the nature and severity of an impairment is given greater weight than opinions from other sources and will be accorded controlling weight if well-supported by medically acceptable clinical and laboratory techniques and not inconsistent with the other substantial evidence.

> *See Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988)(holding a medical
> opinion that is inconsistent with the record will be given less weight); 20 C.F.R. §
> 416.927(d)(2); and SSR 96-2p.  Medical opinions unsupported by physical
> examination offered by state agency medical consultants at the initial and
> reconsideration stages must be considered along with other medical evidence, but
> may be entitled to less weight than conflicting opinions from examining medical
> experts, but only if such conclusions comport with objective medical signs and
> clinical findings (SSR 96-6p).  The claimant's allegations of pain and related
> subjective complaints are credited only when objective medical signs and findings
> show the existence of a medical impairment which could reasonably be expected
> to produce such complaints (SSR 96-7p).

(R. at 21).

In this case, the ALJ conducted a detailed review of the opinions of impairment, Duncan's statements regarding the effects of her impairments and the objective medical evidence.  In conducting this review, the ALJ accorded "little weight" to the assessment of Dr. Hahalyak, Duncan's long-time primary care physician, in determining her residual functional capacity.  (R. at 22).  The opinion of Dr. Kumar, the non-examining consultant, was given "great weight."  (R. at 23).

On appeal to this Court, Duncan argues that the ALJ erred in crediting the opinion of Dr. Kumar over that of Dr. Hahalyak.  (ECF No. 10 at 7-11).  In most instances, as recognized by the ALJ, an assessment provided by a treating physician is entitled to more weight than an assessment supplied by a non-examining consultant.  Brownawell v. Commissioner of Social Security, 554 F.3d 352, 357 (3d Cir. 2008).  However, under the present circumstances, Duncan's argument is unavailing.

An opinion expressed by a treating physician does not inevitably control the determination of a claimant's residual functional capacity.  Brown v. Astrue, 649 F.3d 193, 196, n. 2 (3d Cir. 2011).  There are circumstances in which an assessment supplied by a non-examining medical consultant can be credited over an assessment provided by a treating

physician. Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000). The probative force of any medical opinion can only be judged in relation to the evidentiary record as a whole. Miller v. Commissioner of Social Security, 172 F.3d 303, 304 (3d Cir. 1999). The weight to which Dr. Hahalyak's opinion was entitled depended precisely upon the extent to which supporting explanations were provided for the specific functional limitations described on the questionnaire form. Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999).

According to Dr. Hahalyak, the extensive restrictions of Duncan's functional capacities, as he identified on the form, were applicable as early as 2002. (R. at 225). McBride testified that an individual with those limitations could not maintain a job as an administrative assistant. (R. at 39-40). However, Duncan continued to work as an administrative assistant until her November 14, 2008, layoff. (R. at 31). Given the "internally contradictory" nature of Dr. Hahalyak's report, the ALJ was entitled to reject it on the basis of Dr. Kumar's assessment. Jones v. Sullivan, 954 F.2d 125, 129 (3d Cir. 1991). It is also worth noting that the ALJ "did not merely rubber stamp" Dr. Kumar's conclusions. Chandler, 667 F.3d at 361. The ALJ determined that Duncan could never kneel, stoop, crouch or crawl even though Dr. Kumar had indicated that she could "occasionally" perform those postural maneuvers. (R. at 18, 207).

Duncan testified that she frequently needed to elevate her legs in order to reduce swelling. (R. at 35-36). In response to a hypothetical question posed by the ALJ, McBride testified that an individual who needed to elevate his or her legs to the extent described by Duncan would not be able to work as an administrative assistant. (R. at 39-40). Duncan stated that extreme fatigue would prevent her from working. (R. at 36-37). She explained that her "very restless husband" sometimes prevented her from sleeping at night, forcing her to sleep in a recliner. (R. at 37). The ALJ ultimately concluded that Duncan's "statements concerning the

intensity, persistence and limiting effects" of her impairments were not entirely credible. (R. at 19).

Duncan contends that the ALJ erred in declining to fully credit her subjective complaints. (ECF No. 10 at 1). Since the record contained objective evidence of medically determinable impairments that could reasonably be expected to cause the symptoms described by Duncan, her subjective complaints were entitled to "serious consideration." Mason v. Shalala, 994 F.2d 1058, 1067-1068 (3d Cir. 1993). Nonetheless, the ALJ was not required to credit Duncan's testimony in every conceivable respect. Chandler, 667 F.3d at 363. A close examination of the record confirms that Duncan's subjective complaints were seriously considered. Duncan testified that she had been using a cane for roughly fifteen years. (R. at 34). The ALJ credited that portion of Duncan's testimony by affording her an accommodation permitting the use of a hand-held assistive device for prolonged walking and standing. (R. at 18). McBride testified that an individual requiring such an accommodation could perform Duncan's past relevant work as an administrative assistant. (R. at 39). The portion of McBride's testimony pertaining to a *hypothetical individual* with additional limitations did not preclude a determination that *Duncan* could return to her past relevant work. Craigie v. Bowen, 835 F.2d 56, 57-58 (3d Cir. 1987). Furthermore, any fatigue caused by the behavior of Duncan's "very restless husband" could not have rendered her "disabled" under the Act. (R. at 37). In order to qualify for benefits, a claimant must demonstrate that his or her inability to work is attributable to a "physical or mental impairment." Barnhart v. Walton, 535 U.S. 212, 217, 122 S.Ct. 1256, 152 L.Ed.2d 330 (2002).

A claimant's productive work history is ordinarily a factor weighing in favor of his or her credibility as a witness. Taybron v. Harris, 667 F.2d 412, 415, n. 6 (3d Cir. 1981). Duncan maintains that her work history was improperly ignored by the ALJ. (ECF No. 10 at 11).

Contrary to Duncan's assertion, her employment history as an administrative assistant was central to the ALJ's decision. Duncan testified that she had been laid off on November 14, 2008. (R. at 31). In support of her factual findings, the ALJ specifically observed that Duncan had "stopped working due to a business-related layoff" rather than because of medically determinable impairments. (R. at 22). Duncan stated that she had received unemployment compensation benefits during the two years immediately following the elimination of her job. (R. at 31). As explained earlier, an individual must be "able to work and available for suitable work" in order to qualify for such benefits. 43 PA. STAT. § 801(d)(1). Duncan's receipt of unemployment compensation benefits was relied upon by the ALJ as a basis for denying her claim. (R. at 22). The ALJ pointed out that there was "no evidence of a significant deterioration in [Duncan's] medical condition" after her lay-off on November 14, 2008. (R. at 22). It was also noted that Duncan's treatment had "generally been conservative in nature" subsequent to her alleged onset date. (R. at 22). Under the present circumstances, the ALJ's finding is supported by the evidence.

## VII. CONCLUSION

In light of the existing record, it was not unreasonable for the ALJ to conclude that Duncan could return to her past relevant work as an administrative assistant. (R. at 23). The fact that Duncan's prior position had already been eliminated is of no dispositive significance. Thomas, 540 U.S. at 25 (explaining that the fourth step of the sequential evaluation process "can result in a determination of no disability without inquiry into whether the claimant's previous work exists in the national economy"). The Commissioner's decision denying Duncan's application for disability insurance benefits is "supported by substantial evidence." 42 U.S.C. § 405(g). It is respectfully recommended that Duncan's motion for summary judgment (ECF No.

9) be denied, that the Commissioner's motion for summary judgment (ECF No. 11) be granted, and that the Commissioner's decision be affirmed.  In accordance with 28 U.S.C. § 636(b)(1), the parties have fourteen days to file written objections to this report and recommendation.  A party's failure to file written objections will seriously impair her ability to challenge this Court's legal conclusions on appeal.  <u>Brightwell v. Lehman</u>, 637 F.3d 187, 193, n. 7 (3d Cir. 2011).

BY THE COURT:


<u>/s/ Maureen P. Kelly</u>
Maureen P. Kelly
United States Magistrate Judge

Dated: January 3, 2014

cc:     All counsel of record